UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| MARK NAIYU SUN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:07-cv-227-JMH |
| | ) |
| v. | ) |
| | ) |
| CM PRODUCTS, INC. and CHICAGO METALLIC PRODUCTS, INC., | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| Defendants. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Defendants' Motion for Summary Judgment [Record No. 77].  Plaintiff has responded [Record No. 89], and Defendants have filed a Reply in further Support of their Motion for Summary Judgment [Record No. 81].[1] This Court being sufficiently advised, this motion is ripe for consideration.

**I.   BACKGROUND**

Defendant CM Products, Inc. ("CM"), sells products under the trade name CM Packaging and is a manufacturer of recyclable

---

[1] Defendants have field a Motion to Strike Plaintiff's Unauthorized Summary Judgment Sur-Reply [Record No. 84], asking the Court to strike "Plaintiff's Response Defendants' Reply Memorandum in Support of Motion for Summary Judgment" [Record No. 83], which is, in effect, a sur-reply.  Neither the Federal Rules of Civil Procedure, the Local Rules of this Court, specifically LR 7.1, nor any order in this matter provide for the filing of sur-replies.  Further, Plaintiff did not seek leave of Court prior to filing this sur-reply nor does the document seek to address any issue of fact or law which Plaintiff could not have addressed in his Response to Defendants' Motion for Summary Judgment.  Accordingly, Defendants' Motion to Strike shall be granted, and Plaintiff's "Response Defendants' Reply Memorandum in Support of Motion for Summary Judgment" [Record No. 83] shall be stricken.

aluminum foil containers, plastic packaging, and food containers for the bakery, produce, deli, supermarket, pizza, restaurant, packer processor, distribution, and food service industry. CM's product line consists of aluminum and plastic containers, such as baking pans, food service trays, and take-out containers. CM is a subsidiary of Defendant Chicago Metallic Products, Inc., located in Lake Zurich, Illinois.

On July 5, 2006, Plaintiff Sun sent an email to Ron Kelly, CM's Director of Purchasing, in which he stated that he represented Chinese aluminum foil manufacturers and invited Kelly to contact him. Kelly responded by email to Sun later that same day, stating that "[w]e currently do not import household foils but are strongly considering" and inquiring whether Sun would be interested in meeting to discuss possibilities and price quotes. Sun's initial email referenced a website address, but Kelly did not realize at the time that it was the website for Loften Aluminum Foil Industry Company ("Loften"), as Sun represented that he spoke on behalf of "Sun Industries," not Loften.

Kelly has declared that Sun's email inquiry was unsolicited, that unsolicited inquiries from potential brokers and suppliers are common, and that he often responds by requesting further information. Sun has stated, however, that he spoke with Kelly on the telephone on July 5, 2006, prior to Sun's transmittal of any price quotations to Kelly, and that an oral contract was formed

during that conversation.[2] In his response to the Motion for Summary Judgment, Sun claims that during the alleged telephone conversation, Kelly provided Sun with his email address and his name, explained that CM had a facility near Louisville, Kentucky, and that a meeting could be arranged there. [Response to Motion for Summary Judgment, Record No. 89, at 2.] In any event, in his responses to Defendants' Second Set of Interrogatories, Sun identified the terms of the alleged contact as follows:

> Sun would convey CM Packaging inquiries to Loften Aluminum Foil Industry Co. LTD. Sun International Company would get Loften Aluminum Foil Industry Co.'s quotation, would add Sun's commission fee to the quotation, and would send the quotation to CM Packaging. Mark Sun also explicitly told CM Packaging that without Sun involvement CM Packaging could neither contact nor deal with the company that Sun introduced.

[*See also* Response to Motion for Summary Judgment, Record No. 89, at 2.] Sun has not, however, provided any further detail of that contract and concedes that any alleged oral contract failed to set forth when Sun's services would begin or terminate, did not specify whether Sun would play any part in arranging or facilitating delivery of goods that CM might purchase from Loften, and did not

---

[2] Kelly has no recollection of a telephone conversation with Sun on that day but has declared that he never agreed that CM would use Sun's services or that CM would purchase food service foil, or any other products, from Loften through Sun.

specify a commission fee to be charged by Sun or paid by CM.[3]

Sun again sent emails to Kelly on July 6, 2006, and July 12, 2006, containing price quotations for "aluminum food service foil." On July 18, 2006, Kelly requested a price quotation for shipping to CM's facility in Illinois, which Sun provided the next day. All of these quotations were for food service foil. None of the price quotations made by Sun were for foil coil, which is a different product from food service foil with entirely different uses. For example, CM uses foil coil to make containers such as aluminum pans, trays, and bakeware, while food service foil is comparable to household aluminum foil and is used, for example, to wrap sandwiches. Kelly stopped communicating with Sun because CM was not interested in purchasing food service foil at that time.

In fall 2006, CM began investigating manufacturing opportunities in China for aluminum foil coil, retaining China Smart Sourcing ("CSS") to assist in that process. CSS is an Illinois and Shanghai-based sourcing firm that, among other services, helps American companies identify, select, and negotiate contracts with Chinese manufacturers, and suppliers. Frank Cai of CSS introduced CM to several aluminum manufacturers in China, including Loften. Cai supplied CM with detailed information about

---

[3] Specifically, Sun did not respond to September 29, 2008, Defendants' Requests for Admissions, and the time to do so has expired. *See* Fed. R. Civ. P. 36(a)(3) (providing 30 days after service of requests for written answer or objection). Thus, each fact set forth therein is deemed admitted. *Id.*

Loften, arranged for a face-to-face meeting between CM and Loften representatives in China in October 2006, and facilitated the ordering and shipping of sample products from Loften to CM.

Since that time, CM has communicated with Loften about the possibility of purchasing aluminum foil coil products, but the parties have not entered into contracts for the purchase of products, with the exception of certain sample products. In that time, Loften has manufactured sample aluminum foil coil products for CM's inspection in order to determine whether Loften has the capacity to manufacture products that meet CM's required specifications. In these discussions, CM has explored only the purchase of foil coil, not purchase of food service foil. CM has not purchased and is not considering the purchase of food service foil from Loften. Further, the business relationship between CM and Loften with regard to foil coil is the result of the efforts of Cai, CSS, and CM itself, not the result of any introduction or other effort by Plaintiff Sun.

On September 22, 2006, Kelly received an email from Sun stating that he was "aware" of CM's "recent relationship with Loften," accusing Kelly and CM of "betray[ing]" him and using "unmoral business practices" [*sic*]. Kelly responded by email and stated that CM did not have a contract with Loften, that CM was talking to many brokers who talk to the same vendors as Sun, and that CM had not yet settled on any one supplier or broker.

On April 1, 2007, Sun emailed Kelly again, claiming that CM and Loften had "signed the 1800 metric ton per year aluminum foil contract" on which he was entitled to a commission of five-percent. Sun demanded payment of a commission, which he estimated to be $342,000, and claimed that he was entitled to five-percent of the value of "any future transaction" between CM and Loften of any kind for an indeterminate time. Kelly responded by email that same day, stating that CM's business with Loften had nothing to do with Sun, that CM did not have a commitment with Sun to buy any product from Loften or anyone else, that Sun merely quoted prices like many other suppliers, and that Sun quoted prices for food service foil, which CM was not buying from Loften.

Kelly spoke with Sun on one occasion after Sun's demand for payment. During that conversation, Kelly had difficulty understanding Sun due to his "basic English language skills" and "heavy accent." Kelly asked CM's Marketing Manager, Ted Leung, to speak with Sun by telephone in Chinese. Leung, however, was unable to communicate effectively with Sun because they spoke different dialects of Chinese and because Sun was not making sense.

Plaintiff, proceeding *pro se*, avers in his amended complaint that CM orally retained him to "introduce" CM to Loften, a Chinese aluminum manufacturer, in exchange for a commission on any future sales between CM and Loften. Sun takes the position that he made the "introduction" of Loften to CM and that CM eventually agreed to

-6-

purchase products from Loften, entitling Sun to commissions over a five year period in the amount of $1.7 million.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

### A. Choice of Law

As an initial matter, the Court must first determine which state's substantive law – Kentucky or Illinois – applies in this matter. A federal court sitting in a diversity action, such as this one, must apply the choice of law rules of the forum state. *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir.

-7-

2000). Kentucky courts apply the "most significant relationship" test set forth in § 188 of the Restatement (Second) of Conflict of Laws, which states, in relevant part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties…
>
> (2) In the absence of an effective choice of law by the parties…, the contacts to be taken into account…to determine the law applicable to an issue include:
>
> > (a) the place of contracting,
> >
> > (b) the place of negotiation of the contract,
> >
> > (c) the place of performance,
> >
> > (d) the location of the subject matter of the contract, and
> >
> > (e) the domicile, residence, nationality, place of incorporation and place of business of the parties…

*Wallace Hardware*, 223 F.3d at 392, quoting § 188 of the Restatement (Second) of Conflict of Laws.

Plaintiff Sun alleges that an oral contract was formed during a telephone conversation on July 5, 2006, between himself in Kentucky and Ron Kelly in Illinois where CM is located. Thus, factors (a), (b), and (e) do not weigh more heavily in favor of either state. However, factors (c) and (d) clearly establish a connection to Illinois and do not show any connection to Kentucky

-8-

with regard to the alleged contract. Any goods ordered by CM and brokered by Plaintiff Sun were allegedly contemplated by both parties to be delivered to CM at its place of business in Illinois. This is established by the fact that CM requested, and Plaintiff provided, a price quotation for delivery of the goods to CM's facility in Lake Zurich, Illinois. Thus, the place of performance would have been Illinois, if indeed a contract had been formed. In addition, factor (d), the location of the subject matter of the alleged contract, would also be Illinois as CM is located in Illinois, the goods would have been delivered to Illinois, and CM would have made use of them in Illinois. In light of the strong connection to Illinois and the absence of any other connection to Kentucky, the Court shall apply Illinois contract law in this case.[4]

### B. Plaintiff Fails to Identify an Enforceable Agreement

Under Illinois law, an oral agreement is enforceable if there is an offer, an acceptance, and a meeting of the minds regarding the terms. *Quinlan v. Stouffe*, 823 N.E.2d 597, 603, 355 Ill.App.3d 830, 837 (4th Dist. 2005); *Pritchett v. Asbestos Claim Mgmt. Corp.*, 773 N.E.2d 1277, 1282, 332 Ill.App.3d 890, 896 (5th Dist. 2002). The essential terms of the contract must be "definite and certain." *Quinlan*, 823 N.E.2d at 603, 355 Ill. App. 3d at 837-38; *Action*

---

[4] As the Court notes below, however, Plaintiff's claims fail under both Illinois and Kentucky law.

*Constr. & Restoration, Inc. v. West Bend Mut. Ins. Co.*, 748 N.E.2d 824, 826, 322 Ill. App. 3d 181, 182 (2d Dist. 2001) ("terms must be definite and consistent"); *see also Northeast Ill. Reg'l Commuter R.R. Corp. v. Kiewit Western Co.*, 396 F.Supp.2d 913, 921 (N.D. Ill. 2005) (same). A contract is sufficiently definite if the court is able to ascertain what the parties have agreed to do. *Pritchett*, 773 N.E.2d at 1282, 332 Ill. App. 3d at 896. A meeting of the minds occurs "where there has been assent to the same things in the same sense on all essential terms and conditions." *Id.*

Plaintiff Sun claims that he offered to "introduce [CM] to a Chinese aluminum foil mill" and "in return would receive a commission on any sale between the two parties." Sun contends that "Ron Kelly agreed to these terms and accepted Mark Sun introductions," and that the "introduction" entailed Mr. Sun "convey[ing]" CM's "inquiries" to Loften, obtaining a price quotation from Loften, adding his own commission fee to the quotation, and sending the quotation to CM. These terms constitute the entirety of the alleged oral contract.

Absent from this alleged contract are critical terms for any broker contract – when the contract would begin, how long it would last, what specific services the broker would provide, and how his commission would be determined. In this sense, the alleged oral contract is similar to that in *Wald v. Chicago Shippers Association*, in which the Appellate Court of Illinois found a

-10-

freight consolidation services contract "too vague" to be enforceable because it failed to specify "quantity or volume of freight, duration of the contract or applicable time periods, price, or other terms to clearly define [the defendant's] obligations under the contract." 529 N.E.2d 1138, 1145, 175 Ill.App.3d 607, 617 (1st Dist. 1988). Likewise, in *Northeast Illinois Commuter Railroad Corp. v. Kiewit Western Co.*, 396 F.Supp.2d 913, 921 (N.D. Ill. 2005), after stating that "[p]rice is generally an essential term of a common law contract," the district court found that evidence that one of the parties said to "spare no expense" and that the estimated cost "seemed pretty reasonable" was too vague and indefinite to create an enforceable contract.

The contract alleged by Sun does not specify the duration of the contract, the specific nature of the services he would provide, or, perhaps most tellingly, the price of his services. While Mr. Sun now lays claim to a five-percent commission, Kelly has testified that he never agreed to a five-percent commission. Certainly, the term "commission" itself is not self-defining as to amount. Thus, it cannot possibly be concluded that Kelly and Sun had mutual assent concerning the essential terms of any oral contract. In this instance, the terms of the alleged offer were far too vague to define the respective parties obligations, rendering any alleged oral contract unenforceable.

Plaintiff's claim for breach of contract fails under Illinois

law.[5]

### C. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Also Fails

Under Illinois law, while "there may be an implied covenant of good faith and fair dealing, this contractual covenant is not generally recognized as an independent source of duties giving rise

---

[5] Even if the Court applies Kentucky law, the oral contract alleged by Sun is unenforceable. Under the law of the Commonwealth, "must contain definite and certain terms setting forth promises of performance to be rendered by each party" in order to be enforceable, and the "terms must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of breach." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997); *see also Quadrille Bus. Sys. v. Kentucky Cattlemen's Ass'n*, 242 S.W.3d 359, 364 (Ky. Ct. App. 2007). A plaintiff "must show that an actual agreement existed between the parties with clear and convincing evidence." *Quadrille*, 242 S.W.3d at 364. Although the agreement "need not cover every conceivable term of the relationship, it must set forth the 'essential terms' of the deal." *Id.* (citations omitted). Thus, to be enforceable the agreement must contain "at least some semblance of definiteness as to what services were to be rendered, when they were to begin and how long they were to last, and what was promised in recompense for the services." *Valuzat v. Janes*, 462 S.W.2d 194, 196 (Ky. Ct. App. 1971). As set forth in the Court's analysis above, the oral agreement alleged by Plaintiff does not have the required definiteness as to the essential terms – what was to be done, when those services were to be done and for how long, and what was promised in return. The absence of any price or formula for calculating a commission, for which Plaintiff demands damages, makes it impossible for the Court to determine the measure of damages. *See Quadrille*, 242 S.W.3d at 364 ("A sound reason for the requirement that the terms of a contract be clear and definite is so that the court can measure the damages in the event of its breach."), citing *Kovacs*, 957 S.W.2d at 254. As in *Quadrille*, "the amount of damages would be based on nothing more than speculation and conjecture." *Quadrille*, 242 S.W.3d at 364. As under Illinois law, the contract alleged by Sun would be unenforceable under Kentucky law because its terms, including the nature of Sun's services and his compensation for those services, are neither definite nor certain.

to a cause of action in tort." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 53, 348 Ill.App.3d 846, 853 (1st Dist. 2004) (affirming dismissal of claim), quoting *Cramer v. Ins. Exchange Agency*, 174 Ill.2d 513, 525 (1996) (internal quotations omitted); *see also Lozman v. Putnam*, 767 N.E.2d 805, 810, 328 Ill.App.3d 761, 766 (1st Dist. 2002) (affirming dismissal of claim alleging breach of the duty of good faith and fair dealing because there is no independent cause of action in tort for breach of such a duty arising from a contract). The only exception to this rule is limited to insurers under a very narrow circumstance, which is not applicable here. *See Martin*, 808 N.E.2d at 53, 348 Ill.App.3d at 853. Sun's claim for breach of the implied covenant of good faith and fair dealing clearly arises out of the alleged breach of contract by CM, Sun cannot assert a separate cause of action for breach of the implied covenant, and his claim will be dismissed as a matter of law.[6]

**IV. CONCLUSION**

For all of the reasons stated above, Plaintiff's claims for

---

[6] This claim would fail, even if the Court determined that Kentucky law applied in this case. While, under Kentucky law, every contract contains an implied covenant of good faith and fair dealing, "in the absence of an underlying contract, no covenant of good faith and fair dealing arises." *Quadrille*, 242 S.W.3d at 364; *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). As the Court has already determined that there was no valid, enforceable contract between Sun and Defendants, no implied covenant of good faith and fair dealing can be imposed upon Defendants under Kentucky law.

breach of contract and breach of the implied covenant of good faith and fair dealing fail.  Defendants' Motion for Summary Judgment shall be granted, and Plaintiff's claims shall be dismissed.

Accordingly, **IT IS ORDERED**:

(1) that Defendants' Motion to Strike Plaintiff's Unauthorized Summary Judgment Sur-Reply [Record No. 84] is **GRANTED**;

(2) that Plaintiff's "Response Defendants' Reply Memorandum in Support of Motion for Summary Judgment" [Record No. 83] is **STRICKEN**;

(3) that the Defendants' Motion for Summary Judgment [Record No. 77] is **GRANTED.**

This 22nd day of January, 2009.



Signed By:
_Joseph M. Hood_
Senior U.S. District Judge